IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

EMILIO AVILA,

                        Plaintiff,

        v.

PEDIATRIX MEDICAL GROUP, INC.
THE PEDIATRIX MEDICAL GROUP,
LONG TERM DISABILITY PLAN,

                        DefendantS.

Case No. 3:10-cv-00119-TMB

**ORDER**

Plaintiff Emilio Avila ("Avila") moves for attorney's fees, costs, and prejudgment interest on his previously awarded Long Term Disability benefits ("LTD benefits").[1] Defendant and Third-Party Plaintiff Pediatrix Medical Group Long Term Disabililty Plan ("the Plan") and Standard Insurance Company ("Standard") (together "Defendants") oppose these motions in part.[2] For the reasons stated below, Avila's motions for attorney's fees, costs, and prejudgment interest are **GRANTED in part** and **DENIED in part.**

---

[1] Dkts. 108, 109.

[2] Dkt. 115.

1

## I. DISCUSSION

1. Motion for Attorney's Fees

Under the ERISA statute, "the court, in its discretion may allow a reasonable attorney's fee and costs of the action to either party."[3] In *Hardt v. Reliance Standard Life Ins. Co.*, the Supreme Court held that an ERISA plaintiff need not be a "prevailing party" in order to obtain an award of attorney's fees, rather, they must achieve "some degree of success on the merits."[4] "Some degree of success" is more than a mere "trivial" or "purely procedural" victory.[5] After determining whether a plaintiff has achieved "some degree of success on the merits," the court must consider the following "*Hummell*" factors in deciding whether to exercise their discretion to award attorney's fees:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.[6]

It is generally presumed that a successful ERISA plaintiff will recover attorney's fees absent "special circumstances" that would render an award "unjust."[7]

---

[3] 29 U.S.C. § 1132(g)(1).

[4] 130 S. Ct. 2149, 2156-59 (2010).

[5] *Id.*

[6] *Simonia v. Glendal Nissan/Infiniti Disability Plan,* 608 F.3d 1118, 1121 (citing *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980)).

[7] *McElwaine v. US West, Inc.*, 176 F.3d 1167, 1172 (9th Cir. 1999) (citations omitted); *Sterio v. HM Life*, 369 Fed. App'x 801, 805 n.2 (9th Cir. Mar. 4, 2010) (quoting *United Steelworkers of Am. v. Retirement Income Plan for Hourly Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 564 (9th Cir. 2008)).

An award of attorney's fees under ERISA is calculated under the "hybrid lodestar / multiplier approach."[8] Under that approach, the court first multiplies the "number of hours reasonably expended by the attorney(s) on the litigation by a reasonable hourly rate, raising or lowering the lodestar according to" various factors identified by the Ninth Circuit.[9] The party seeking an award of attorney's fees bears the burden of establishing the reasonableness of its claimed rate and number of hours.[10] The court must determine the reasonable hourly rate in light of "the experience, skill, and reputation of the attorney requesting fees" and may exclude hours that are "excessive, redundant, or otherwise unnecessary."[11]

The factors that may support adjustments to the lodestar amount in "rare cases" include: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.[12]

---

[8] *McElwaine v. US West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999).

[9] *Id.* (citing *D'Emanuele v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1383 (9th Cir. 1990), *overruled on other grounds City of Burlington v. Dague*, 505 U.S. 557 (1992)).

[10] *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir. 2007) (citations omitted).

[11] *Id.* at 945-46.

[12] *D'Emanuele*, 904 F.2d at 1383 (citation omitted). Notably, many of these factors can no longer be used to adjust the lodestar in light of intervening Supreme Court and Ninth Circuit decisions. *See Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 n.2 (9th Cir. 2002).

Here, the "Defendants acknowledge that Avila has prevailed to a sufficient degree, such that some award of fees is proper."[13] Thus, the Court need not discuss whether attorney's fees weigh the *Hummel* factors to determine whether attorney's fees are appropriate. However, the parties differ as to what amount of fees is proper. Avila requests $47,160 in attorney's fees, which he reaches by charging $300 an hour for 157.2 total hours spent on the case.[14]

Defendants argue that Avila should recover no more than $19,012.50 in attorney's fees.[15] Defendants do not object to the $300 per hour rate, but object to the inclusion of 42.4 attorney house spent "on unsuccessful claims against Sun Life and 24.3 hours [on] his unsuccessful challenge to Standard's damage calculation."[16] Defendants further argue that "the lodestar amount should be reduced by at least 25% to reflect Avila's severe miscalculation of the value of this lawsuit, which resulted in the rejection of a settlement offer two years ago worth more than the damages awarded, and caused more than 111 hours (almost ¾ of all the hours billed) in unnecessary work ."[17] Thus, Defendants argue that Avila should recover attorney's fees for no more than 84.5 hours, which yields a recovery of $25,350.[18] They also argue that the $25,350 should be reduced by 25% based on Avila's miscalculation of the lawsuit and rejection of a

---

[13] Dkt. 115 at 4.

[14] Dkt. 108 at 5, 8; Dkt. 111-1 at 7; Dkt. 120. Avila initially requested $45,360, but later made a supplemental filing requesting fees for an additional 6 hours spent replying to the Defendants' opposition to his motions for attorney's fees and prejudgment interest. Dkt. 120.

[15] Dkt. 115 at 5.

[16] *Id.* at 5-6.

[17] *Id*. at 6.

[18] *Id.*

settlement offer, based on the theory that "[a]ttorney's fees accumulated after a party rejects a substantial offer provide minimal benefit to the prevailing party . . ."[19] Therefore, the Defendants request that Avila be awarded no more than $19,012.50 in attorney's fees.[20]

The Court agrees with Avila that his attorney's fees should not be reduced by 25%. The Defendants' argument that the attorney's fees accumulated after the rejection of a settlement offer brought little additional value to the litigation is negated by the fact that with this victory, Avila retains the right to apply for benefits in the future. The settlement offer, though it was slightly more than Avila was ultimately awarded, required that he release Standard from all future liability and a potential future LTD claim.[21] Given that Avila had a brain tumor and his work has substantially changed since then, it is understandable that he viewed a release of future liability as an unacceptable condition of settlement. The value of a potential future LTD benefits claim, which he may still bring, outweighs the fact that he rejected the settlement offer.

The Defendants also object to 42.4 hours of attorney time spent on claims against Sun Life Financial Insurance ("Sun Life").[22] The Court ruled that Sun Life was not liable for Avila's LTD benefits, but instead that Standard owed Avila LTD benefits.[23] Avila sued only the Plan after he was denied LTD benefits by both Standard and Sun Life.[24] The Plan in turn brought Sun

---

[19] *Id.* at 6-7.

[20] *Id.* at 7.

[21] Dkt. 118 at 8.

[22] Dkt. 115 at 5-6.

[23] Dkt. 73.

[24] Dkt. 1 ¶ 17-18. Avila claims that he did this to stay out of the fight between the insurance companies over which party owed him benefits.

Life into the case.[25]  Sun Life then filed a Fourth-Party Complaint against both Avila and Standard.[26]  The Court agrees with Avila that the dispute between the insurers over who had the responsibility to pay his LTD benefits was not of his making and does not warrant a reduction in the amount of attorney's fees.[27]  Further, the Court will not reduce his attorney's fees by the hours spent responding to Standard's damages calculation.  Accordingly, Avila is awarded $47,160 in attorney's fees.

       2.      Motion for Prejudgment Interest

Courts also have discretion to award prejudgment interest in ERISA actions.[28]  The question of "[w]hether to award prejudgment interest to an ERISA plaintiff is 'a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities.'"[29]

Balancing the equities, the Court also finds that an award of prejudgment interest is appropriate.  Standard's argument that prejudgment interest should not be awarded because of Avila's relatively high income and because they were not aware of his claim for additional benefits is not persuasive.[30]  In the Ninth Circuit, the appropriate interest rate is the rate for

---

[25] Dkt. 13.

[26] Dkt. 28 at 6.

[27] *See* Dkt. 118 at 5.  The Plan switched from Standard to Sun Life insurance during the middle of Avila's LTD claim, which caused confusion over who was responsible for his LTD benefits.  Both Sun Life and Standard denied him LTD benefits.  Dkt. 1 ¶ 17-18.

[28] *Blankenship v. Liberty Life Assurance Co. of Boston*, 486 F.3d 620, 627-28 (9th Cir. 2007).

[29] *Landwehr v. DuPree*, 72 F.3d 726, 739 (9th Cir. 1995).

[30] *See* Dkt. 115 at 8.

postjudgment interest under 28 U.S.C. § 1961.[31] That provision provides that "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment."[32] Interest is to be compounded annually.[33] Avila argues that the Court should use its discretion to award a higher interest rate based on the equities.[34] Based on Avila's tax returns, the amount of LTD benefits he was ultimately awarded, and his withdrawals from his IRA Account, it is not clear that deviating from the standard interest rate is warranted.[35] The Court agrees with the Defendants' position that interest should be awarded as it came due. Accordingly, the prejudgment interest calculation yields the following:

Thus, the Defendants owe a total of $8,019.32 in interest accrued as the LTD benefits should have been paid to Avila. The following calculation calculates the Yearly Interest Rate on Avila's total $171,526.99 award after it was earned.

| Year | Interest Rate | Amount Due |
|------|---------------|------------|
| 2008 | 1.83 | $3,138.94 |

---

[31] *Blankenship*, 486 F.3d at 628.

[32] § 1961(a).

[33] *Id.* § 1961(b)

[34] *See* Dkt. 109 2-4.

[35] Avila's total income in 2006 was $710,405. Dkt. 110-1 at 1. That year, he took a $142,000 IRA distribution. *Id.* However, the amount of benefits was he entitled to from that period is $59,735. In 2007, his total income was $592,090. *Id.* at 3. Avila did not take an IRA distribution in 2007. *Id.* Thus, it appears that Avila's IRA withdrawal and any penalties he may have suffered, which is the basis of his claim for higher prejudgment interest rate, were not due to Standard's failure to pay his LTD benefits.

| Benefits Period | Net LTD Benefit | Interest Rate | Amount Due |
|---|---|---|---|
| 6/23/2006 – 7/16/2006 | $6,513.13 | 5.16 | $336.08 |
| 7/17/2006 – 8/16/2006 | $8,154.06 | 5.22 | $425.64 |
| 8/17/2006 – 9/16/2006 | $8,154.06 | 5.08 | $414.23 |
| 9/17/2006 – 10/16/2006 | $8,154.06 | 4.97 | $405.26 |
| 10/17/2006 – 11/16/2006 | $9,125.27 | 5.01 | $465.39 |
| 11/17/2006 – 12/16/2006 | $9,192.25 | 5.01 | $460.53 |
| 12/17/2006 – 1/16/2007 | $10,443.77 | 4.94 | $515.92 |
| 1/17/2007 – 2/16/2007 | $11,617.19 | 5.06 | $587.83 |
| 2/17/2007 – 3/16/2007 | $11,615.74 | 5.05 | $586.59 |
| 3/17/2007 – 4/16/2007 | $11,614.65 | 4.92 | $571.44 |
| 4/17/2007 – 5/15/2007 | $11,614.65 | 4.93 | $572.60 |
| 5/17/2007 – 6/16/2007 | $7,404.25 | 4.91 | $363.55 |
| 6/17/2007 – 7/16/2007 | $3,456.98 | 4.96 | $171.47 |
| 7/17/2007 – 8/16/2007 | $3,456.98 | 4.96 | $171.47 |
| 8/17/2007 – 9/16/2007 | $4,429.63 | 4.47 | $198.00 |
| 9/17/2007 – 10/16/2007 | $13,000 | 4.14 | $538.20 |
| 10/17/2007 – 11/16/2007 | $13,000 | 4.10 | $533.00 |
| 11/17/2007 – 12/16/2007 | $13,000 | 3.50 | $455.00 |
| 12/17/2007 – 1/16/2008 | $7,580.32 | 3.26 | $247.12 |
| Total Interest During Benefits Period | | | $8,019.32 |
| 2009 | | 0.47 | $806.18 |
| 2010 | | 0.32 | $548.89 |
| 2011 | | 0.18 | $308.75 |
| 2012 | | 0.17 | $291.60 |
| 2013 | | 0.155 | $265.87 |
| Total | | | $5,360.22 |
| Total Prejudgment Interest | | | $13,379.54 |

Accordingly, Avila is awarded $13,379.54 in prejudgment interest.

3.  Motion for Costs

Avila moves under 28 U.S.C. § 1920 and 29 U.S.C. § 1132(g) for $5,343.21 in costs associated with this litigation.[36] The Defendants agree that the Court has discretion to award costs and litigation expenses when it is the prevailing practice in the community for lawyers to bill for those costs.[37] However, the Defendants argue that "the litigation expenses sought here include expenses that are not traditionally billed, and even those that are traditionally billed, are not justified in this particular matter."[38] The Defendants argue that costs related to the mediation should not be reimbursed.[39] The Court disagrees. However, the Court is sympathetic to the Defendants' argument that the cost of Avila himself attending the meditation are not traditionally billable costs. The Defendants argue that Avila improperly seeks reimbursement for $935.06 in his own (as opposed to his counsel's) costs of attending the mediation, including air fare, hotel, and per diem.[40] However, the Court notes that the itemization of costs includes only Avila's hotel room and per diem. Accordingly, the Court finds that Avila may not be reimbursed for his $80 per diem or $354.73 hotel room during the mediation.[41] Avila is awarded the remaining $4,908.48 in costs.

---

[36] Dkt. 108 at 6; Dkt. 106 at 1.

[37] Dkt. 115 at 9.

[38] *Id*. at 10.

[39] *Id.*

[40] *Id.*

[41] Dkt. 106-1 at 5, 10.

## II. CONCLUSION

For the foregoing reasons, Avila's motion for attorney's fees and costs at Docket 108 is **GRANTED in part and DENIED in part.** Avila's motion for prejudgment interest at Docket 109 is **GRANTED in part and DENIED in part**. Avila is awarded attorney's fees in the amount of $47,160.00, costs in the amount of $4,908.48, and prejudgment interest in the amount of $13,379.54.

Dated at Anchorage, Alaska, this 16th day of April, 2014.

/s/ Timothy M. Burgess
TIMOTHY M. BURGESS
U.S. DISTRICT JUDGE